Justice Thomas,
concurring in part and dissenting in part.
I agree with Justice Scalia that federal immigration law does not pre-empt any of the challenged provisions of S. B. 1070. I reach that conclusion, however, for the simple reason that there is no conflict between the “ordinary meaning]” of the relevant federal laws and that of the four provisions of Arizona law at issue here. Wyeth v. Levine, 555 U. S. 555, 588 (2009) (Thomas, J., concurring in judgment) (“Pre-emption analysis should not be a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives, but an inquiry into whether the ordinary meanings of state and federal law conflict” (brackets and internal quotation marks omitted)).
Section 2(B) of S. B. 1070 provides that, when Arizona law enforcement officers reasonably suspect that a person they have lawfully stopped, detained, or arrested is unlawfully present, “a reasonable attempt shall be made, when practicable, to determine the immigration status of the person” pursuant to the verification procedure established by Congress in 8 U.S.C. § 1373(c). Ariz. Rev. Stat. Ann. § 11-1051(B) (West 2012). Nothing in the text of that or any other federal statute prohibits Arizona from directing its officers to make immigration-related inquiries in these situations. To the contrary, federal law expressly states that “no State or local government entity may be prohibited, or in any way *438 restricted, from sending to or receiving from” federal officials “information regarding the immigration status” of an alien. 8 U. S. C. § 1644. And, federal law imposes an affirmative obligation on federal officials to respond to a State’s immigration-related inquiries. § 1373(c).
Section 6 of S. B. 1070 authorizes Arizona law enforcement officers to make warrantless arrests when there is probable cause to believe that an arrestee has committed a public offense that renders him removable under federal immigration law. States, as sovereigns, have inherent authority to conduct arrests for violations of federal law, unless and until Congress removes that authority. See United States v. Di Re, 332 U. S. 581, 589 (1948) (holding that state law determines the validity of a warrantless arrest for a violation of federal law “in [the] absence of an applicable federal statute”). Here, no federal statute purports to withdraw that authority. As Justice Scalia notes, ante, at 426 (opinion concurring in part and dissenting in part), federal law does limit the authority of federal officials to arrest removable aliens, but those statutes do not apply to state officers. And, federal law expressly recognizes that state officers may “cooperate with the Attorney General” in the “apprehension” and “detention” of “aliens not lawfully present in the United States.” § 1357(g)(10)(B). Nothing in that statute indicates that such cooperation requires a prior “request, approval, or other instruction from the Federal Government.” Ante, at 410 (majority opinion).
Section 3 of S. B. 1070 makes it a crime under Arizona law for an unlawfully present alien to willfully fail to complete or carry an alien registration document in violation of 8 U. S. C. §§ 1304(e) and 1306(a). Section 3 simply incorporates federal registration standards. Unlike the Court, I would not hold that Congress pre-empted the field of enforcing those standards. “[O]ur recent cases have frequently rejected field pre-emption in the absence of statutory language expressly requiring it.” Camps Newfound/Owatonna, Inc. *439 v. Town of Harrison, 520 U. S. 564, 617 (1997) (Thomas, J., dissenting); see, e. g., New York State Dept. of Social Servs. v. Dublino, 413 U. S. 405, 415 (1973). Here, nothing in the text of the relevant federal statutes indicates that Congress intended enforcement of its registration requirements to be exclusively the province of the Federal Government. That Congress created a “full set of standards governing alien registration,” ante, at 401 (majority opinion), merely indicates that it intended the scheme to be capable of working on its own, not that it wanted to preclude the States from enforcing the federal standards. Hines v. Davidowitz, 312 U. S. 52 (1941), is not to the contrary. As Justice Scalia explains, ante, at 429, Hines at most holds that federal law pre-empts the States from creating additional registration requirements. But here, Arizona is merely seeking to enforce the very registration requirements that Congress created.
Section 5(C) of S. B. 1070 prohibits unlawfully present aliens from knowingly applying for, soliciting, or performing work in Arizona. Section 5(C) operates only on individuals whom Congress has already declared ineligible to work in the United States. Nothing in the text of the federal immigration laws prohibits States from imposing their own criminal penalties on such individuals. Federal law expressly pre-empts States from “imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens.” 8 U. S. C. § 1324a(h)(2) (emphasis added). But it leaves States free to impose criminal sanctions on the employees themselves.
Despite the lack of any conflict between the ordinary meaning of the Arizona law and that of the federal laws at issue here, the Court holds that various provisions of the Arizona law are pre-empted because they “stan[d] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.” Hines, supra, at 67. *440 I have explained that the “purposes and objectives” theory of implied pre-emption is inconsistent with the Constitution because it invites courts to engage in freewheeling speculation about congressional purpose that roams well beyond statutory text. See Wyeth, 555 U. S., at 604 (opinion concurring in judgment); see also Williamson v. Mazda Motor of America, Inc., 562 U. S. 323, 340-341 (2011) (opinion concurring in judgment); Haywood v. Drown, 556 U. S. 729, 767 (2009) (dissenting opinion). Under the Supremacy Clause, pre-emptive effect is to be given to congressionally enacted laws, not to judicially divined legislative purposes. See Wyeth, supra, at 604 (Thomas, J., concurring in judgment). Thus, even assuming the existence of some tension between Arizona’s law and the supposed “purposes and objectives” of Congress, I would not hold that any of the provisions of the Arizona law at issue here are pre-empted on that basis.